competent, indicates that they were proceeding under the 1927 act. There is nothing before us to indicate that an appointment made in 1927 was made after the passage of that act.

Second. *Quo Warranto* is the proper remedy. *Anderson* v. *Myers,* 77 *N. J. L.* 186; 71 *Atl. Rep.* 139; *Brodman* v. *Rade,* 101 *N. J. L.* 207; 127 *Atl. Rep.* 249; *Weinberger* v. *Hilfman,* 8 *N. J. Mis. R.* 32; 148 *Atl. Rep.* 177; 8 *N. J. Mis. R.* 317; 150 *Atl. Rep.* 198; *Randolph* v. *Rahway,* 106 *N. J. L.* 296; 148 *Atl. Rep.* 793.

Third. Relator appears not to be in laches.

Our conclusion, therefore, is that judgment should be entered that the respondent be ousted from the office of recorder of the borough of Fort Lee, and that the relator is entitled thereto until the expiration of his term of five years from the 1st day of January, 1928.

ADA V. ROFF, PLAINTIFF-RESPONDENT, v. COUNTY OF PASSAIC, DEFENDANT-APPELLANT.

Submitted May 10, 1932—Decided October 17, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices BODINE and DONGES.

On appeal from a judgment of the Passaic County Circuit Court, in which Judge Mackay rendered the following opinion:

"The plaintiff is seeking to recover from the defendant in this action the sum of $4,637.83, claimed to be due as a part of her salary from July 4th, 1927, to date, because of an act

of the legislature of the State of New Jersey entitled 'An act concerning the keeping of the county jails in certain counties of this state.' Sessions Laws, 1927, chapter 255, page 474.

"The parties to this action waived a jury and asked that the case be tried by the court upon an agreed state of facts, to wit, plaintiff was appointed (temporarily) matron of the Passaic county jail on March 1st, 1923. Her appointment as such matron was duly made permanent after she had passed a civil service examination on November 6th, 1924. She has ever since her permanent appointment continued to be and to function as such matron and she is functioning as such at the present time. Her salary, on her permanent appointment, was $1,200 a year. Her salary gradually increased under the law that existed at that time and on July 4th, 1927, when the foregoing act became effective, she was receiving $1,400 a year. She continued to be paid $1,400 a year until January 1st, 1928, when her salary was increased to $1,500 a year. On January 1st, 1929, it was increased to $1,600 a year and on January 1st, 1930, it was increased to $1,620 a year, which sum she has been paid yearly since that time.

"Plaintiff has been employed under the supervision of the sheriff, he not having turned over to the board of freeholders of Passaic county the custody and charge of the jail within said county. Passaic county is a second class county. The public notice under which the civil service examination for the position of matron, to fill which the plaintiff was chosen, described the duties of a matron to be follows:

" 'Duties: Under supervision to be responsible for the custody, discipline and treatment of the female inmates of the county jail, and to perform related work as required.

" 'Typical tasks: Maintaining order and discipline among the female inmates of the jail; rendering first aid to inmates; maintaining sanitary conditions; requisitioning and distributing household equipment, furnishings and supplies for the female inmates.'

"The question presented for decision is: is the plaintiff by reason of the provisions of the 1927 act, entitled to receive

from the county a salary of $2,500 per year (being the salary paid to the attendants engaged in attending the Circuit Court, Court of Oyer and Terminer, Court of Common Pleas and General Court of Quarter Sessions of Passaic County), as from July 4th, 1927, when the aforesaid act became effective, to date?

"The law which defines the duties of matrons in the county jail is as follows:

" 'The said matron or matrons shall have care and control over all females committed to the said county jail, subject to the authority of the sheriff of said county; subject to the authority of the sheriff so far as practicable, she or they shall arrange for the segregation of the female inmates of the said institution. * * *.' Public laws, 1914, page 289.

"This law was an amendment of the act of 1910, which provided for the appointment of only one matron. The 1927 act relates to second class counties having a population of more than two hundred thousand inhabitants and where the sheriff has custody of the jail and all prisoners. The act provides that the sheriff shall appoint, with the approval of the board of freeholders, such keepers and assistants as may be reasonably necessary for proper maintenance and protection. The act further provides that such assistants are to be known as jail keepers, and whether engaged in the keeping of such jails as jailors, keepers, jail guards, or by any other title, shall retain their positions under the title of jail keepers, and shall thereafter be paid the same compensation as court attendants engaged in attending the Circuit Court, Court of Oyer and Terminer, Court of Common Pleas and General Court of Quarter Sessions of the peace of the county.

"It is agreed that the court attendants were receiving an annual salary of $2,500 a year and if the 1927 act is a valid exercise of power of the law making body, then the plaintiff would be entitled to a verdict.

" 'The intention of the legislature is to be collected from the words they employ, and where there is no ambiguity in the language, there is no room for construction.' *Woodruff* v. *State,* 68 *N. J. L.* 89; 52 *Atl. Rep.* 294.

" 'It will not be intended that the legislature designed to produce an inequality unless the terms used are so plain and explicit as not to be misconstrued.' *State* v. *Mills,* 34 *N. J. L.* 177, 180.

" 'A departure from the language of an unambiguous statute is not justified by the rule of construction and is an exercise of legislative power.' *Douglas* v. *Board of Chosen Freeholders,* 38 *N. J. L.* 214; *Application of Passaic City Clerk,* 94 *N. J. L.* 384; 116 *Atl. Rep.* 695.

" 'Words and phrases must be taken in the sense in which they are usually understood in the law, when applied and used in reference to the subject about which and to which the statute relates.' *Yeo* v. *Mercereau,* 18 *N. J. L.* 385, 387.

"There was some question in my mind as to whether the general words used in the statute of 1927, to wit, 'jailers, keepers and jail guards' limited the general language following: 'or by any other title,' and called for a construction of the act which would eliminate these words, and confine it only to the persons named; but I find that our courts hold to the contrary so that a matron would come within the provisions of the act.

"This question would invoke the rule of *ejusdam generis,* which is resorted to as an aid in construction. *State* v. *Smith,* 233 *Mo.* 242; 33 *L. R. A.* (*2d ed.*) 179. The question is one of intention. *Camden* v. *Cape May,* 102 *N. J. Eq.* 353; 140 *Atl. Rep.* 672.

" 'The rule *ejusdam generis* does not require the rejection of general terms entirely, and it is to be taken in connection with other rules of construction.' See 44 *Century Digest* 2825.

" 'The cardinal principle for the construction of statutes is that they are to be construed that, if possible, full effect shall be given to all parts of the statute.

" 'A statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant.' *Steel* v. *Board,* 89 *N. J. L.* 609; 99 *Atl. Rep.* 318.

"In addition to this the matron is actually one of the keepers

of the county jail because it is so provided by law that she shall act as a keeper, and it is quite likely that the word 'matron' was used instead of 'keeper' or 'jail keeper' to distinguish her from those of the opposite sex.

"The plaintiff is entitled to a judgment in the sum of $4,637.83. If I am incorrect in this calculation, counsel may correct the same.

"Judgment for plaintiff in the sum of $4,637.83 being the amount due from July 4th, 1927, to November 28th, 1931."

For the defendant-appellant, *William R. Rogers.*

For the plaintiff-respondent, *Henry Marelli.*

PER CURIAM.

The judgment is affirmed for the reasons stated by Judge Mackay.

ANNA VAN BLUNK, PLAINTIFF-RESPONDENT, v. CHARLES REAL ESTATE COMPANY, DEFENDANT-APPELLANT.

Submitted May 13, 1932—Decided October 19, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices BODINE and DONGES.